# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| THE PETRAM GROUP, LLC. and GLORIA SWOYER,<br><br>  Plaintiffs,<br><br>vs.<br><br>PURIFIED RESOURCE PARTNERS,<br><br>  Defendant. | No. C25-4002-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before me on a motion (Doc. 11) to dismiss Count III of the complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Purified Resource Partners (Purified). Plaintiffs The Petram Group, LLC (Petram), and Gloria Swoyer (Swoyer) have filed a resistance (Doc. 13) and Purified has filed a reply (Doc. 14).

## II. BACKGROUND

Plaintiffs filed the complaint on January 13, 2025. They allege that they are parties to two contracts, as follows:

1. On July 10, 2024, Petram received an executed purchase and sales agreement (PSA) from Swoyer regarding the purchase of minerals contained in Lots 3 and 4 of Section 6, Township 24 North, Range 59 East, M.P.M., Richland, County, Montana (Section 6).

2. On July 24, 2024, Petram received an executed PSA from Swoyer regarding the purchase of minerals contained in E/2NW of Section 7, Township 24 North, Range 59 East, M.P.M., Richland County, Montana (Section 7). Doc. 1 at 3, ¶¶ 9, 12.

Plaintiffs further allege that on August 16, 2024, Purified recorded a "Mineral and Royalty Deed" purporting to exercise ownership of the minerals contained within Sections 6 and 7, an action that took plaintiffs by surprise. *Id.* at 4, ¶ 21.

The complaint asserts three counts: Quiet Title to the Minerals (Count I), Declaratory and Injunctive Relief (Count II) and Tortious Interference with Contract (Count III). Plaintiffs contend that federal jurisdiction is proper under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000. *Id.* at 2, ¶ 4. Additionally, they allege that venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions that gave rise to the plaintiffs' claims occurred in the Northern District of Iowa. *Id.* at ¶ 6. Plaintiffs offer the following factual allegations in support of their claims:

> 9. On July 10, 2024, Petram received from Swoyer an executed PSA for the Minerals in Section 7 and an executed Mineral Deed transferring the Minerals in Section 7 to Petram.
>
> 10. Section 1.3 of the July 10, 2024 PSA requires that, within ten business days of Petram receiving an executed copy of the PSA, Petram must make a $5,000 earnest money payment to Swoyer. On July 22, 2024, Petram sent an earnest money payment of $5,000 to Swoyer.
>
> 11. On the same day, July 10, 2024, Petram sent a separate written offer to purchase the Minerals in Section 6 to Swoyer by overnight mail. The PSA Petram mailed on July 10, 2024 offered to purchase 22.59 net mineral acres in Section 6 for $126,504.
>
> 12. On July 24, 2024, Petram received from Swoyer an executed PSA for the Minerals in Section 6.
>
> 13. Section 1.3 of the July 24, 2024 PSA requires that, within ten business days of Petram receiving an executed copy of the PSA, Petram must make a $5,000

earnest money payment to Swoyer. On August 5, 2024, Petram made an earnest money payment of $5,000 to Swoyer.[1]

14.   By letter dated July 10, 2024, Purified mailed Ms. Swoyer an offer to purchase the Minerals. Purified offered to purchase the Minerals from Swoyer for $106,500 – less than half of the offer Swoyer accepted from Petram for the same minerals. The Purified Deed was included in the materials that Purified mailed to Swoyer on or about July 10, 2024.

15.   On August 6, 2024, Swoyer executed the Purified Deed. At the time she executed the Purified Deed, Swoyer mistakenly believed that the Purified Deed was associated with her sale of the Minerals to Petram. Swoyer returned the Purified Deed with wire instructions for payment to Purified in a pre-addressed green envelope that was included with the offer materials Purified had sent to Swoyer.

16.   Swoyer never executed a PSA with Purified. Nor has Swoyer accepted any payment from Purified for the Minerals.

20.   On April 14, 2024,[2] Petram transmitted payment by wire to Swoyer: (i) $112,000 for the Minerals in Section 7; and (ii) $126,504 for the Minerals in Section 6.

21.   On August 16, 2024, Purified recorded the Purified Deed in the Richland County property records at Reception No. 622819.

---

[1] Plaintiffs do not specify whether the earnest money payment applies to Section 6 or 7. The complaint later states: "On August 5, 2024, Petram made a $5,000 earnest money payment to Swoyer, consistent with the terms of the **July 10, 2024 PSA** [Section 7]." Doc. 1 at 6, ¶ 34 (emphasis added). This appears to be a typographical error. I assume that plaintiffs intended to state that the $5,000 earnest money payment was consistent with the terms of the **July 24, 2024**, PSA (Section 6), as they previously alleged that on July 22, 2024, Petram sent Swoyer the $5,000 earnest money payment, consistent with the July 10, 2024, PSA (Section 7). *Id.* ¶ 33. It would not make sense for plaintiffs to have made two earnest money payments for the same property.

[2] This appears to be a typographical error. I assume plaintiffs meant August 14, 2024, as Petram and Swoyer did not agree to a sale of the minerals until July 2024. This inference is supported by plaintiffs' resistance (Doc. 13), which states that on *August* 14, 2024, Petram wired Swoyer $238,504 for the minerals. *Id.* at 4.

22. On August 19, 2024, Petram recorded its deed to the Minerals – the deed received from Swoyer on August 13, 2024 – in the Richland County property records at Reception No. 622858.

24. On or about August 26, 2024, Swoyer received a check in the amount of $106,500 from Purified. Swoyer did not cash the check.

Doc. 1 at 2-5. Purified filed its motion to dismiss on February 13, 2025.

## III. APPLICABLE STANDARDS

### A. *Rule 12(b)(1) Standards*

Rule 12(b)(1) permits a party to seek dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The federal courts are courts of limited jurisdiction that "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). The Federal Rules of Civil Procedure authorize a motion to dismiss a complaint due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proving subject matter jurisdiction is on the plaintiff. *V S Ltd. Partnership v. Dept. of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)).

### B. *Rule 12(b)(6) Standards*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it

> demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While factual plausibility is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018

WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *McMahon*, 2018 WL 3381406, at *2 n.2. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

### IV. DISCUSSION

#### A. *Rule 12(b)(1) Analysis*

Although Purified brought its motion only with regard to Count III, invoking Rule 12(b)(6), a federal court has a special obligation to consider *sua sponte* whether it has subject matter jurisdiction in every case. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). I will therefore start by addressing whether plaintiffs have properly

invoked this court's jurisdiction. They contend that this court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy is greater than $75,000. Doc. 1 at 2, ¶ 4.

In Count I, plaintiffs assert a claim for "Quiet Title To The Minerals." *Id.* at 6. As an action to quiet title is an *in rem* proceeding, I must first address whether this court has in rem jurisdiction over the property in question.[3] *See United States v. Nasri*, 119 F.4th 1172, 1175 (9th Cir. 2024) ("In rem jurisdiction allows parties to file actions and courts to enter judgments against property."); *Fed. Land Bank of Omaha v. Jefferson*, 295 N.W. 855, 857 (Iowa 1941) ("[A] proceeding in rem is one which is taken directly against property, or one which is brought to enforce a right in the thing itself."); *see also Kristensons-Petroleum, Inc. v. Sealock Tanker Co.*, 304 F. Supp. 2d 584, 589 (S.D.N.Y. 2004) ("It is well-settled that subject matter jurisdiction and *in rem* jurisdiction are distinct.") (collecting cases). Because plaintiffs invoke diversity jurisdiction, I must first determine whether Montana or Iowa law applies. "*Erie* mandates that a federal court sitting in diversity apply the substantive law of the forum State, absent a federal statutory or constitutional directive to the contrary." *Perry v. Johnston*, 641 F.3d 953, 955 (8th Cir. 2011) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). This includes the forum state's choice-of-law rule. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1148 (8th Cir. 2023) ("According to long-settled precedent, a federal

---

[3] Although an action to quiet title is typically an *in rem* action, 28 U.S.C. § 1655 "gives a federal court *in personam* jurisdiction over all persons in actions to quiet title to real estate located in the state where the federal court sits." *McKinley v. Martin*, 722 F. Supp. 697, 699 (D. Wyo. 1989). Plaintiffs do not appear to rely on § 1655, as it is neither mentioned in their complaint nor do they assert that this court has federal question jurisdiction under 28 U.S.C. § 1331 over any of their claims. In any case, actions brought under § 1655 must be brought in the district where the property is located. *See Martin*, 722 F. Supp. at 699 (citing *First Charter Land Corp. v. Fitzgerald*, 643 F.2d 1011, 1014 (4th Cir. 1981)); 28 U.S.C. § 1655. As the contested properties are located in Montana, plaintiffs could not maintain a cause of action under § 1655 in this district.

court sitting in diversity borrows the forum State's choice-of-law rule.") (citations omitted).

Plaintiffs contend that Montana law governs the resolution of Count III and presumedly would make a similar argument regarding Count I.[4] *See* Doc. 13 at 5-8. However, the Eighth Circuit has held that before attempting to resolve "messy issues of conflict of laws" a court must determine "there actually is a difference between the relevant laws of the different states." *C.H. Robinson Worldwide, Inc.*, 60 F.4th at 1149 (quoting *Phillips v. Marist Soc. of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996)). Montana and Iowa law regarding quiet title actions is identical. Montana authorizes quiet title actions (*see* Mont. Code Ann. § 70-28-101 (2023)) and mandates that all actions "be brought in the county in which the real estate or a portion thereof, as to which the title is sought to be quieted, is situated." *Id.* at § 70-28-103 (2023); *see also Heinecke v. Scott*, 26 P.2d 167, 168 (Mont. 1933) ("Thus an action to reform a deed has been held to be local, and must be tried where the real estate is situated."); *Getter v. Beckman*, 769 P.2d 714, 716 (Mont. 1989) ("Montana courts, however, do have the jurisdiction to quiet title to property located in Montana."). Similarly, Iowa law requires that "[a]ctions for the recovery of real property . . . or for the determination of such right or interest . . . must be brought in the county in which the subject of the action or some part thereof is situated." Iowa Code § 616.1 (2025); *see also Cornell v. Wunschel*, 329 N.W.2d 651, 652 (Iowa 1983) ("Iowa Code section 616.1 (1981) mandates that the action be brought in the county where the real estate is located.").

Because Montana and Iowa law concerning quiet title actions is identical, I find it unnecessary to engage in the choice-of-law analysis and therefore will apply Iowa law. *See Phillips*, 80 F.3d at 276 ("In the absence of a true conflict, *lex fori* controls."); *Platte*

---

[4] Plaintiffs argue that their tortious interference claim has the most significant relationship with Montana. Doc. 13 at 6. As the disputed properties are located in Montana, it is reasonable to assume that they would make a similar argument with respect to this count.

*Valley Bank v. Tetra Fin. Grp., LLC*, 682 F.3d 1078, 1083 (8th Cir. 2012) ("Because there is no substantive difference between the laws of the contact states, we apply the law of Nebraska, the forum state."). As Sections 6 and 7 are both located in Montana, an action for quiet title cannot be maintained in this district, as Iowa law requires that such actions be brought in the county where the property is located. *See* Iowa Code § 616.1 (2025). Therefore, Count I must be dismissed for lack of subject matter jurisdiction.

In Count II, entitled "Declaratory & Injunctive Relief," plaintiffs request both a declaration "that Petram owns the Minerals" and an order (i.e., an affirmative injunction) directing Purified "to immediately execute and record a corrective deed to eliminate any ambiguity in the public property records." Doc. 1 at 7, ¶ 43. The requested declaration is, for all practical purposes, the same remedy requested in Count 1. *Compare id.* ¶ 39. For the reasons discussed with regard to Count I, this court may not determine the ownership of mineral rights with regard to real estate located in Montana. As such, the request for declaratory relief set forth in Count II must be dismissed for lack of subject matter jurisdiction.

As for the request for an affirmative injunction requiring Purified to execute and record a deed to plaintiffs' liking, I note that under both Iowa and federal law, declaratory and injunctive relief are remedies, not independent causes of action. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("the Declaratory Judgment Act . . . does not provide an independent basis for federal jurisdiction."); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 648 (Iowa 2013) ("Before a court can adjudicate a claim, there must be 'a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.'") (quotations omitted). Because Count I is not properly before this court, Count II's request for injunctive relief can survive only as a potential remedy for Count III.

Count III asserts a claim for tortious interference with contract which, under Iowa law, is an *in personam* cause of action. *Van Iperen v. Hays*, 259 N.W. 448, 451 (Iowa 1935) ("Suits in personam . . . are against a person; and the relief is sought against him. . .") (citations omitted). While it is based on a contract for the sale of real property, this is immaterial to the distinction between *in rem* and *in personam* actions. *Jordan v. Osmun*, No. 16-cv-501, 2017 WL 2999689, at *2 (E.D. Va. Feb. 15, 2017) ("[T]he Court may impose orders upon the Defendants personally even where doing so may indirectly act upon real property in another state.") (citing *Fall v. Eastin*, 215 U.S. 1, 8 (1909)). Because all parties are citizens of different states and the amount in controversy appears to exceed the sum or value of $75,000, exclusive of interest and costs, diversity jurisdiction is proper under 28 U.S.C. § 1332. As such, this court has subject matter jurisdiction over Count III.[5] The court will treat the request for injunctive relief, as set forth in Count II, as one of the remedies plaintiffs request as to Count III.

### B. Rule 12(b)(6) Analysis

#### 1. *Tortious Interference with Contract Claim*

Purified contends that Count III is facially deficient. It argues that plaintiffs cannot maintain a claim for tortious interference with contract under Iowa law because (1) Purified is merely asserting its own contractual rights and (2) the complaint does not allege that any of Purified's actions were improper prior to August 16, 2024, the date Purified recorded its deed. Doc. 11-1 at 8-12. In response, plaintiffs assert that Montana

---

[5] Although venue in this district seems questionable, Purified did not object to venue in its motion to dismiss. Therefore, all potential venue objections have been waived. *Upchurch v. Piper Aircraft Corp.*, 736 F.2d 439, 440 (8th Cir. 1984) ("The United States made no objection to venue when it answered the complaint filed in the Northern District of Iowa. Any venue objection it might have had has thus been waived."); *see also Gibbs v. United States*, 865 F. Supp. 2d 1127, 1138 n.8 (M.D. Fla. 2012), *aff'd*, 517 F. App'x 664 (11th Cir. 2013) ("Indeed, Rule 12(h)(1) provides that some defenses, including improper venue, are waived by failing to raise them in the initial Rule 12 motion.").

law governs this dispute. Doc. 13 at 5-8. Moreover, they argue that they have sufficiently alleged a claim for tortious interference because "Purified is asserting a property interest in Minerals that Purified knows, or should know, Purified does not own." *Id.* at 8-9.

I will first address the choice of law issue. As stated earlier, the court must first determine "there actually is a difference between the relevant laws of the different states." *C.H. Robinson Worldwide, Inc.*, 60 F.4th at 1149. Purified contends that Montana and Iowa law regarding tortious interference with contract are "functionally identical." Doc. 14 at 2. I agree.

Under Montana law, to establish a claim of tortious interference with a contract, the plaintiff must prove that the defendant's acts:

> 1) were intentional and willful; 2) were calculated to cause damage to the plaintiff in his or her business; 3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and 4) that actual damages and loss resulted.

*Emmerson v. Walker*, 236 P.3d 598, 603 (Mont. 2010) (quoting *Hardy v. Vision Serv. Plan*, 120 P.3d 402, 406 (Mont. 2005)); *see also Sonju Indus., Inc. v. Precise Sols. Corp.*, No. CV 14-02-M-DLC, 2014 WL 1347989, at *7 (D. Mont. Apr. 4, 2014) (same). Additionally, Montana has recognized this tort under the Restatement (Second) of Torts. *Wagner v. MSE Tech. Applications, Inc.*, 383 P.3d 727, 731 (Mont. 2016) ("This Court has recognized the tort of intentional interference with contractual or business relations under the Restatement (Second) of Torts.") (citing Restatement (Second) of Torts § 766A (1977)); *see also Victory Ins. Co. v. Mont. State Fund*, 344 P.3d 977, 980 (Mont. 2015) (listing the four elements of tortious interference with contract under Montana law and citing Restatement (Second) of Torts § 767).

Iowa law defines the tort similarly. A plaintiff must prove five elements to make out a claim for tortious interference with contract in Iowa:

> (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the

contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.

*Hackett v. Gaeta*, 838 N.W.2d 869 (Table), 2013 WL 4011440, at *2 (Iowa Ct. App. 2013). Moreover, like Montana, "[the Iowa] Supreme Court has adopted Restatement (Second) of Torts sections 766 and 767 and applied the restatements comments." *Gerdts v. Donan Eng'g Co.*, 4 N.W.3d 464 (Table), 2024 WL 257009, at *5 n.9 (Iowa Ct. App. 2024) (citing *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 663–64 (Iowa 2008)).

Iowa and Montana's tortious interference law is essentially identical. While Iowa law requires that the "defendant knew of the contract" between the plaintiff and the third-party, this is not an enumerated element in Montana law. Nonetheless, Montana law requires that the interference be "intentional or willful." *See Walker*, 236 P.3d at 603. The Eighth Circuit has stated that "doing or omitting to do a thing. . . willfully implies not only a knowledge of the thing but a determination with a bad intent." *Chicago, St. P., M. & O. Ry. Co. v. United States*, 162 F. 835, 841 (8th Cir. 1908). Therefore, as Montana law implicitly requires knowledge, I find that there is not a substantive difference between Montana and Iowa law regarding tortious interference with contract. The states define the cause of action similarly and have both adopted the Restatement (Second)'s definitions, as contained within §§ 766 & 767.[6] I will therefore apply Iowa law to Count III. *See Platte Valley Bank*, 682 F.3d at 1083 (finding that the forum law applies where "[a]ll three states define conversion in a similar manner, and all three states have adopted the revised Article 9 of the Uniform Commercial Code.").

In seeking to dismiss Count III, Purified focuses exclusively on the third element: "defendant intentionally and improperly interfered with the contract." *See Jones v. Univ.*

---

[6] While maintaining that Montana law governs Count III, plaintiffs acknowledge that Montana and Iowa tortious interference law have "similar elements." Doc. 13 at 8 n.4.

*of Iowa*, 836 N.W.2d 127, 151 (Iowa 2013); *see also* Doc. 13 at 8. Purified contends that the alleged interference is merely its rejection of the plaintiffs' requests to recognize Petram's title, which occurred weeks after Purified had lawfully received title to the minerals in Sections 6 and 7. Doc. 11-1 at 9. It argues that under Iowa law, "a party does not interfere with another's contract by exercising its own legal rights in protection of its own financial interest." *Id.* (citing *Hackett*, 2013 WL 4011440, *and Gen. Elec. Cap. Corp. v. Comm. Servs. Grp., Inc.*, 485 F. Supp. 2d 1015 (N.D. Iowa 2007)). Plaintiffs allege, however, that Purified knows, or should know, that it did not acquire the minerals in Section 6 and 7 from Swoyer. Doc. 13 at 9.

Under Iowa law, "[t]he intent to interfere with a contract does not make the interference improper." *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 244 (Iowa 2006) (citing *Berger v. Cas' Feed Store, Inc.,* 543 N.W.2d 597, 599 (Iowa 1996)). Indeed, "a party does not improperly interfere with another's contract by exercising its own legal rights in protection of its own financial interests." *Berger*, 543 N.W.2d at 599. To demonstrate "improper" interference, a plaintiff must prove that the defendant had "a predominant purpose of causing injury" to the plaintiff. *Id*. at 599-600. Courts consider the following factors to determine if the challenged conduct was improper:

> 1. The nature of the conduct.
> 2. The Defendant's motive.
> 3. The interests of the party with which the conduct interferes.
> 4. The interest sought to be advanced by the Defendant.
> 5. The social interests in protecting the freedom of action of the Defendant and the contractual interests of the other party.
> 6. The nearness or remoteness of the Defendant's conduct to the interference.
> 7. The relations between the parties.

*Green*, 713 N.W.2d at 244 (Iowa 2006); *see also Gen. Elec. Cap. Corp*, 485 F. Supp. 2d at 1026 (noting that impropriety is determined by evaluating these seven factors).

Plaintiffs have failed to allege any facts that would make relief plausible. First, they make contradictory contentions regarding the factual basis for their claim. On the

one hand, they assert that their claim for tortious interference is not based on "Purified's transmittal of an offer letter to Swoyer." Doc. 13 at 11 n.5. Indeed, they seemingly concede that Purified did not engage in improper interference until August 31, 2024, when it was made aware of the plaintiffs' PSA.[7] Doc. 1 at 5, 8.

On the other hand, plaintiffs provide the following examples in support of their claim: "Swoyer never spoke to anyone associated with Purified about selling the minerals, never executed a PSA with Purified and never accepted payment from Purified for the minerals." Doc. 13 at 9. These events—or the absence thereof—all predate Purified's knowledge about plaintiffs' PSAs, thus calling into question how Purified could have engaged in improper interference with a contract of which it had no knowledge.

Moreover, as Purified notes, all of plaintiffs' allegations concern Swoyer's actions. Doc. 14 at 4. Actions taken or not taken by Swoyer cannot provide support for a tortious interference claim against Purified. *See King v. Sioux City Radiological Grp., P.C.*, 985 F. Supp. 869, 882 (N.D. Iowa 1997) ("This tort is not committed by parties to the contract; the tortfeasor must interfere with a contract between another and a third person."). As Swoyer's actions cannot support the plaintiffs' tortious interference claim, all that remains of their claim is the contention that "Purified intentionally, willfully, and with actual malice rejected requests from Swoyer and Petram to recognize Petram's title." Doc. 1 at 8. Plaintiffs argue that the facts here mirror the circumstances in *Emmerson v. Walker*, 236 F.3d 598 (Mont. 2010). In that case, Emmerson and the Walkers were in the process of closing a real-estate transaction, when Johnson, who knew of the agreement, "engaged in a calculated course" of at least six intentional acts to try to "negate the agreement." *Id.* at 604. Plaintiffs contend that "Purified is aware of the PSAs that Swoyer and Petram executed, yet it nevertheless endeavors to obtain the Minerals for itself." Doc. 13 at 12.

---

[7] The alleged interference begins 15 days after Purified recorded its deed to the minerals contained within Sections 6 and 7 on August 16, 2024. Doc. 1 at 4-5.

In contrast to the facts of *Emmerson*, Purified did not learn about the agreement between the plaintiffs until after it had received and recorded an executed deed from Swoyer. *Cf. Aventure Commc'ns Tech., LLC v. Sprint Commc'ns Co. L.P.*, 224 F. Supp. 3d 706, 781 (S.D. Iowa 2015) (holding that a plaintiff stated a claim for tortious interference with contract when the plaintiff alleged it had a contract with AT&T, the defendant knew of the contract and interfered by "surreptitiously entering its own contract with AT&T"). Moreover, although plaintiffs maintain that "Purified knows, or should know, that he has no legal right to the Minerals," (Doc. 13 at 12), they do not argue that the offer Purified sent to Swoyer, or Swoyer's executed deed to Purified, was an improper method of contract formation. Nor do they contend that Iowa law prohibits a party from retaining an executed deed obtained pursuant to a lawful offer. As such, *Emmerson* offers little support for the plaintiffs' claim.

*Hackett*, cited by Purified, is instructive. *See* 2013 WL 4011440. In *Hackett*, Charles Gaeta contested a probate court ruling that allowed his siblings to purchase their mother's land at an auction. *Id.* at *1. He contended that he had an oral agreement with his father, which gave him a contractual option to purchase the land at a set price from the estate. *Id.* at *2. His siblings, in turn, brought a claim against him contending that he tortiously interfered with their contracts to purchase the land. *Id.* The court held that Charles' actions were not improper:

> Even if he sought to prevent or delay [his siblings] in closing on their respective real estate transactions, and thereby caused them injury, this was not, as they contend, the sole motivation for his petitioning the probate court. Rather, it was a necessary incident to his primary purpose—fully asserting his legal rights to protect his financial interest in the farm real estate before the sale to [his siblings] could defeat it.

*Id.*

Here, plaintiffs allege that on July 10, 2024, Purified mailed Swoyer an offer to purchase the minerals in Sections 6 and 7 for $106,500. Doc. 1 at 3, ¶ 6. On August 6, 2024, Swoyer (mistakenly) executed the Purified deed. *Id.* at ¶ 15. On August 16,

2024, Purified recorded the deed and mailed a check to Swoyer for the agreed purchase price. *Id.* at 4, ¶ 21; Doc. 11-1 at 4. Therefore, even if Purified is seeking to prevent or delay plaintiffs from executing their agreements regarding Sections 6 and 7, plaintiffs do not allege any facts suggesting that Purified did not obtain legal rights when it received and recorded a properly executed deed.[8] As such, plaintiffs have failed to plausibly allege that Purified's actions are anything other than incidental to its primary purpose of protecting its own financial interest in the mineral property.

Plaintiffs have failed to plausibly plead a claim for tortious interference with contract. As such, Count III must be dismissed under Rule 12(b)(6).

### 2. *Leave to Amend*

Neither party addressed the issue of whether the court should give plaintiffs the opportunity to amend their complaint. Plaintiffs did not seek leave to amend when faced with the motion to dismiss. Nor have they explained how any potential amendment might cure the issues addressed in this order. As such, I find that there is no reason to permit an amendment. *See, e.g., Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("[T]he district court was not required to engage in a guessing game" when the plaintiffs failed to explain how they "would amend the complaint to save the claim.").

### V. CONCLUSION

For the reasons stated herein, Purified's motion (Doc. 11) to dismiss is **granted**, as follows:

---

[8] Additionally, Purified correctly asserts that it at least has a colorable claim to the property under the Iowa Recording Act. Doc. 14 at 4; *see also* Iowa Code § 558.41 (2024); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("We hold that matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice" in a motion to dismiss.).

1. Count I of the complaint, along with the request for declaratory relief set forth in Count II of the complaint, are **dismissed** for lack of subject matter jurisdiction.

2. Count III of the complaint, along with the request for injunctive relief set forth in Count II of the complaint, are **dismissed** for failure to state a claim upon which relief may be granted.

Because this order disposes of all claims asserted in the complaint, the Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 25th day of April, 2025.

_____
Leonard T. Strand
United States District Judge